## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| ROYCE BALLARD | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:19-cv-00865 |
| | § | |
| CARRINGTON MORTGAGE | § | |
| SERVICES, LLC, et al. | § | |

### DEFENDANTS' DISMISSAL MOTION

### I.    ARGUMENT SUMMARY

After twice abusing the bankruptcy process to avoid foreclosure, Mr. Ballard now sues to prevent a third foreclosure sale.  He fails to allege any facts specific to himself, his property, the loan, or defendants.  He asserts general, meritless allegations and claims to obscure his default and avoid the consequences of non-payment.  His claims fail because (**1**) they base on rejected legal theories, (**2**) he lacks standing, and (**3**) the deed of trust, assignment, and lien are valid.

### II.    FACTUAL ALLEGATIONS

#### A.  Mr. Ballard obtains a loan and grants a lien against the property.

Mr. Ballard executed a note and deed of trust promising to repay a $275,793 loan and granting a lien against 22014 Rustic Canyon Lane, Richmond, Texas 77469 to secure repayment of the loan.  (Ex. 1, deed of trust.)  Mortgage Electronic Registration Systems, Inc. (**MERS**) was the beneficiary and nominee of the deed of trust for Southwest Funding, L.P. and its assigns.  (*Id*.)  MERS assigned the deed of trust to Bank of America, N.A. (**BANA**) in December 2016.  (Ex. 2, assignment.)  BANA is the current beneficiary, and Carrington Mortgage Services, LLC (**Carrington**) services the loan.  (*Id*; Ex. 3, notice of sale.)

#### B.  Mr. Ballard files bankruptcy twice to stop foreclosure.

BANA scheduled a foreclosure sale for July 3, 2018.  (Ex. 4, notice of sale.)  The day of the sale, Mr. Ballard filed chapter 13 bankruptcy.  (*See In re: Royce Wesley Ballard*, No. 18-

33728 (Bankr. S.D. Tex. July 19, 2018)).  The court dismissed his bankruptcy two weeks later after he failed to file schedules, list of creditors and other required documents.  (*Id.*)

Carrington, as BANA's servicer, re-noticed a foreclosure sale for November 6, 2018. (Ex. 5, notice of sale.)  Mr. Ballard filed bankruptcy one day before the sale.  (*See In re: Royce Wesley Ballard*, No. 18-36177 (Bankr. S.D. Tex. November 21, 2018)).  Again, he failed to file required documents, and the court dismissed his case two weeks later.  (*See id.*)

### C.  Mr. Ballard sues to stop foreclosure.

On March 1, 2019, Mr. Ballard sued defendants to stop a March 5 foreclosure sale.  (Doc. 1-2 at ¶ 1.)  The court issued a temporary restraining order, and the sale did not occur.  (Doc. 1-3.)  Defendants answered and removed.  (Docs. 1, 1-5.)

Mr. Ballard asserts claims for: (**1**) violation of Texas's fraudulent lien statute, Tex. Civ. Prac. & Rem. Code §§ 12.001, *et seq.*, (**2**) suit to remove cloud and quiet title, and (**3**) declaratory judgment (Doc. 1-2 at ¶¶ 20-43.)  He bases his claims on two grounds: (**1**) defendants lack standing to foreclose because the chain of title from the original lender is broken due to an invalid and void assignment, and (**2**) Carrington did not provide proper notice of default, acceleration and sale.  (*Id.* at ¶¶ 3-4.)  As to the first ground, he alleges (**1**) MERS did not have the authority to transfer a deed of trust, (**2**) MERS did not hold the note so it could not have transferred the deed of trust, and (**3**) MERS failed to identify in the assignment the party it was acting on behalf of.  (*Id.* at ¶¶ 15-19.)

### III.     ARGUMENT & AUTHORITIES

### A.  Legal standard.

The standard for deciding a motion under rule 12(c) is the same as for deciding one under rule 12(b)(6).  *See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n. 8 (5th Cir. 2002).  Rule 12(b)(6) authorizes the dismissal of a complaint failing "to state a

claim upon which relief can be granted."  In deciding a motion to dismiss, a court accepts all well-pleaded facts as true and views them in the light most favorable to the claimant.  *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008).  "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

When deciding a motion to dismiss, a court may consider any documents incorporated in the pleading and matters of which it can take judicial notice.  *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996).  "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-90 (5th Cir. 2000).  "[A] court may permissibly refer to matters of public record."  *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).

## B.  The underlying premises of Mr. Ballard's claims fail.

Mr. Ballard's lawsuit bases on his mistaken beliefs (**1**) the note and deed are inseparable (*i.e.* split-the-note theory) and (**2**) MERS lacked the authority to assign the deed of trust.  (Doc. 1-2 at ¶¶ 15-19.)  Texas state and federal courts have soundly rejected these arguments.  *See e.g.*, *Martins v. BAC Home Loans Servicing, LP*, 722 F.3d 249, 255 (5th Cir. 2013) ("The 'split-the-note' theory is therefore inapplicable under Texas law where the foreclosing party is a mortgage servicer and the mortgage has been properly assigned.  The party to foreclose need not possess the note itself."); *Kramer v. Fannie Mae*, 540 Fed. Appx. 319, 320 (5th Cir. 2013) (terms of the deed of trust are clear, giving MERS the power to foreclose or assign its foreclosure power).

## C.  Mr. Ballard's fraudulent lien claim fails because assignments are not liens.

Mr. Ballard alleges the assignment is fraudulent.  (Doc. 1-2 at ¶¶ 39-43.)  To establish his fraudulent lien claim he must establish defendants: (**1**) made, presented, or used a document with

knowledge that it was a fraudulent lien or claim against real or personal property or an interest in real or personal property, (**2**) intended the document be given legal effect, and (**3**) intended to cause him physical injury, financial injury, or mental anguish.  TEX. CIV. PRAC. & REM. CODE § 12.002(a).  This claim fails because Mr. Ballard lacks standing to challenge the assignment, assignments are not liens under the statute, and the assignment is not fraudulent.

Mr. Ballard lacks standing because he was not a party to the assignment.  (Ex. 2, assignment.)  "Plaintiffs lack standing to allege a fraudulent lien claim based on the Assignment between MERS and BOA because plaintiffs were not parties to the Assignment."  *Marsh v. JPMorgan Chase Bank, N.A.*, 888 F. Supp. 2d 805, 811 (W.D. Tex. 2012) (citing *Swannie v. Bank of New York, Mellon*, No. 4:11–CV–338–Y, 2012 WL 2942242, at *2 (N.D. Tex. Jul. 19, 2012) (mortgagor lacked standing to assert fraudulent lien claim challenging an assignment because he was not a party to that assignment)).

Even if Mr. Ballard had standing, a mortgage assignment is not a "lien," under the fraudulent lien statute because it does not purport to create a lien or claim against property, but merely purports to transfer an existing lien.  *Id.* at 813.  "[I]n order to state a fraudulent lien claim under Section 12.002, a party must allege the challenged instrument purported to create a lien or claim against property."  *Id.* (internal quotations omitted).  Because an assignment purports to transfer an existing deed of trust from one entity to another and does not purport to create a lien or claim, it does not constitute a lien under Section 12.002(a).  *Id.*

The assignment is not fraudulent.  The deed of trust explicitly designates MERS as a beneficiary, and Mr. Ballard agreed to the terms of the deed of trust.  (Ex. 1, deed of trust.)  "Chapter 51 [of the Texas property code] grants MERS authority to act as a beneficiary of [deeds of trust] by including book-entry systems in Chapter 51's definition of 'mortgagees' capable of

initiating foreclosure.  As a beneficiary, MERS ha[s] the right to assign the [deed of trust]." *Ferguson v. Bank of New York Mellon Corp.*, 802 F.3d 777, 781 (5th Cir. 2015).  It is immaterial whether MERS had any interest in the note or debt because Texas law treats a deed of trust and a note as separate instruments.  *Id*.

### D.  Mr. Ballard cannot quiet title in his favor.

Mr. Ballard seeks a declaratory judgment quieting title of all defendants and voiding all documents indicating any defendant's interest in the property pursuant to the deed of trust, assignment and appointment of substitute trustee.  (*Id*. at ¶ 37.)  To quiet title, Mr. Ballard must show: (**1**) an interest in a property, (**2**) defendant's claim affects title to the property, and (**3**) the claim, although facially valid, is invalid or unenforceable.  *U.S. Nat'l Bank Assoc. v. Johnson*, No. 01-10-00837-CV, 2011 WL 6938507 at *3 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

Mr. Ballard's quiet title claim fails against MERS and Carrington because it must be made against a party who claims right to title or ownership of the property.  *See Townsend v. Barrett Daffin Frappier Turner & Engel, LLP*, No. 09-12-00564-CV, 2013 WL 5874607, at *8 (Tex. App.—Beaumont Oct. 31, 2013, pet. denied).  BANA is the only entity claiming a lien on the property.  (Ex. 1, deed of trust; Ex. 2, assignment.)

Mr. Ballard's claim fails against BANA because he cannot prove its lien is invalid or unenforceable.  Mr. Ballard admits the property is encumbered by the deed of trust.  (*See* doc. 1-2 at ¶ 13).  He gives no reason why the deed of trust is void and does not allege he has satisfied the debt.  (*See generally* doc. 1-2.)  His argument the assignment is void is meritless as explained above.  These allegations (or lack thereof) are insufficient to support a quiet title claim.  *Cf. Morlock, LLC v. JP Morgan Chase Bank, N.A.*, No. 12-20623, 2013 WL 2422778, *2 (5th. Cir. Jun. 4, 2013) (no quiet title claim where plaintiff did not challenge the deed of trust's validity or allege superior title).

Mr. Ballard's vague reference to the appointment of substitute trustee is insufficient to support his quiet title claim. The deed of trust gives BANA the power to appoint a substitute trustee. (Ex. 1 at ¶ 20, deed of trust; EX. 2, assignment.) Mr. Ballard's allegation goes to the perceived weakness of BANA's title, not the strength of his title, and is inadequate to support his quiet title claim. *See Ermisch v. HSBC Bank, N.A.*, No. A-13-CV-851 LY, 2015 WL 12862878, at *5 (W.D. Tex. Feb. 9, 2015) (plaintiff in suit to quiet title must rely on strength of his own title, not on the alleged weakness of defendant's).

## E. Mr. Ballard's declaratory judgment request is improper.

Mr. Ballard seeks a declaration:

"the power of sale contained in the Deed of Trust has no force and effect at this time as to any Defendant because Defendants' actions in the processing, handling and any foreclosure of its loan involved fraudulent, false, deceptive and misleading practices including, but not limited to, violations of Texas laws meant to protect the property records and property owner's/mortgage borrowers."

(Doc. 1-2 at ¶ 26.) He makes several arguments purporting to support his claim, including: (**1**) defendants "falsely and fraudulently prepared documents" (*id*. at ¶ 25) and made, presented, or used the assignment knowing it was a fraudulent lien (*id*. at ¶ 28), (**2**) defendants do not have a valid monetary interest in the note as a real party in interest (*id*.), (**3**) defendants failed to perfect any security interest in the property (*id*. at ¶ 27), and (**4**) defendants did not send notice of default, acceleration or sale (*id*. at ¶¶ 20-24). Mr. Ballard's request for declaratory relief is redundant of his other claims and fails for the same reasons.

### 1. Mr. Ballard's declaratory request is redundant.

Mr. Ballard's declaratory judgment action was converted to one brought under the federal declaratory judgment act when BANA removed. *See e.g., Redwood Resort Props., LLC v. Holmes Co.*, 2007 WL 1266060, at *4 (N.D. Tex. Apr. 30, 2007) ("When a declaratory judgment action filed in state court is removed to federal court, that action is in effect converted into one

brought under the federal Declaratory Judgment Act, 28 USC §§ 2201, 2202") (citing *i2 Techs. US, Inc. v. Lanell*, 2002 WL 1461929, at *7 n. 5 (N.D. Tex. Jul. 2, 2002)).   The declaratory judgment act does not create an independent cause of action.  *See e.g.*, *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937).   It provides a form of relief.  *Id*.

A court should not exercise discretion to grant declaratory relief redundant of pending claims.  *Wigginton v. Bank of N.Y. Mellon*, No. 3:10-CV-2128-G, 2011 WL 2669071, at *5 (N.D. Tex. July 7, 2011) (citing *Landscape Design and Constr., Inc. v. Transport Leasing/Contract, Inc.*, 2002 WL 257573, *10 (N.D. Tex. Feb. 19, 2002) (dismissing declaratory judgment action that sought resolution of claims already the basis of suit).  The declaratory relief Mr. Ballard seeks is redundant of his quiet title and fraudulent lien claims.

### 2.   The assignment is not fraudulent and BANA can foreclose as mortgagee.

As explained above, the assignment is not fraudulent.  MERS as a beneficiary had the right to assign the deed of trust.  *Ferguson*, 802 F.3d at 781.  It is immaterial whether MERS or BANA had any interest in the note or debt because Texas law treats a deed of trust and a note as separate instruments.  *Id*.  BANA as the last mortgagee of record, has standing to foreclose, either directly or through a mortgage servicer.  TEX. PROP. CODE § 51.0025.

### 3.   Mr. Ballard admits the deed of trust and assignment were perfected.

Mr. Ballard's allegation defendants failed to perfect any security interest in the property is wrong.  A security interest is perfected when the mortgage, deed of trust, or security instrument creating the interest is properly recorded with the county records.  *See* TEX. PROP. CODE chs. 11-13.  Mr. Ballard admits the deed of trust and assignment were "filed in the Fort Bend County Property Records[.]" (Doc. 1-2 at ¶¶ 13-14; *see also* EX. 1, deed of trust; EX. 2, assignment.)

**4.   There is no private right of action for violations of the Texas property code.**

To the extent Mr. Ballard alleges pre-foreclosure notices were not properly sent, there is no private right of action for violations of Texas property code, chapter 51.   *See Witkowski v. Brian, Fooshee & Yonge Props.*, 181 S.W.3d 824, 831 (Tex. App.—Austin 2005, no pet.) (a plaintiff does not have rights of action merely because a defendant violated a statute; the statute must expressly provide for a private right of action).

Any Texas property code violation is more properly asserted as a "defect in a foreclosure sale" element to a claim for wrongful foreclosure.   *See Palomino v. Wells Fargo Bank, N.A.*, No. 6:15-CV-00375, 2017 WL 989300, at *3 (E.D. Tex. Feb. 17, 2017) ("courts have construed claims for violations of Section 51.002 as claims for wrongful foreclosure . . . This Court will do the same") (citing *Carey v. Fargo*, No. CV H-15-1666, 2016 WL 4246997, at *3 (S.D. Tex. Aug. 11, 2016)), report and recommendation adopted, 2017 WL 978930 (E.D. Tex. Mar. 14, 2017). But, Mr. Ballard has not, and cannot assert, a claim for wrongful foreclosure because there has been no sale.   *Marsh*, 760 F. Supp. 2d at 708 ("A claim for wrongful foreclosure requires that the property in question be sold at a foreclosure sale.")   It is undisputed a temporary restraining order enjoined the sale, and it did not occur.   (Doc. 1-3.)

**F.  Mr. Ballard is not entitled to injunctive relief.**

Because Mr. Ballard fails to plead a viable cause of action, his request for injunctive relief must also be dismissed.   *Cook v. Wells Fargo Bank, N.A.*, No. 3:10-CV-0592-D, 2010 WL 2772445, at *4 (N.D. Tex. July 12, 2010) (citing *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (injunctive relief requires the plaintiff first plead a viable underlying cause of action)); *see also VRC LLC v. City of Dallas*, 460 F.3d 607, 611 (5th Cir. 2006) (plaintiff seeking a permanent injunction must establish, among other things, success on the merits of his claim).

## IV.    CONCLUSION

All of Mr. Ballard's claims fail because the deed of trust and assignment are valid and enforceable.  He also lacks standing to assert his fraudulent lien claim, and has no private right to enforce alleged violations of the Texas property code.  This suit is simply another foreclosure stall tactic, and this court should dismiss it with prejudice.

Date:  April 10, 2019

Respectfully submitted,

*/s/ Andrew D. Thomas*

Andrew D. Thomas, SBN: 24060714
*Attorney-in-Charge*
andrew.thomas@akerman.com
C. Charles Townsend, SBN: 24028053
charles.townsend@akerman.com
AKERMAN LLP
2001 Ross Avenue, Suite 3600
Dallas, Texas 75201
Telephone: 214.720.4300
Facsimile:  214.981.9339

Monica Summers, SBN: 24083594
monica.summers@akerman.com
AKERMAN LLP
112 East Pecan Street, Suite 2750
San Antonio, Texas 78205
Telephone: 210.582.0220
Facsimile: 210.582.0231

**ATTORNEYS FOR DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 10, 2019, a true and correct copy of the foregoing was served as follows:

**V<small>IA</small> CM/ECF:**
Rhonda S. Ross
121 East 12th Street #6
Houston, Texas 77008
rhonda@rhondarossattorney.com
*Attorney for Royce Ballard*

_____*/s/ Monica Summers*_____
Monica Summers

# EXHIBIT 1

3000035699

**2010052685**

Electronically Recorded

Official Public Records

2010 Jun 08 10:47 AM

Dianne Wilson, County Clerk   *Ballard*

Fort Bend County Texas   *BOA*

Pages:   11   Fee: $   51.00   216286304

Aff - P

**2010020488**

Electronically Recorded

Official Public Records

2010 Mar 10 02:15 PM

Dianne Wilson, County Clerk

Fort Bend County Texas

Pages:   10   Fee: $   47.00

**THIS DOCUMENT IS BEING RE-RECORDED TO ADD THE BLOCK # & SLIDE #
TO THE LEGAL DESCRIPTION **

AFTER RECORDED RETURN TO:

Southwest Funding, L.P.
ATTN: Closing Dept.
8848 Greenville Avenue
Dallas, TX 78243

*CHICAGO TIT.
GF# 9491939*

[Space Above This Line For Recording Data]

# DEED OF TRUST

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU
MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION
FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY
BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS:  YOUR SOCIAL
SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

Loan No. [redacted]0225

MIN No. [redacted]225-8

FHA CASE NO.
493-9438265-703

THIS DEED OF TRUST  ("Security Instrument") is made on  March 08, 2010. The Borrower is  Royce Ballard,
a single man  whose address is 22014 Rustic Canyon Lane , Richmond, TX  77469 ("Borrower"). The trustee is  Kelly
Rule,  whose address is 8848 Greenville Avenue, Ste. 300, Dallas, TX 75243 ("Trustee"). The Security Instrument is
given to  Southwest Funding, L.P.  which  is organized and existing under the laws of  the  State of Texas,  and has an
address of 8848 Greenville Avenue, Dallas, TX 75243 ("Lender"). Lender includes any holder of the Note who is entitled
to receive payments under the Note. The beneficiary under this Security Instrument is Mortgage Electronic Registration
Systems, Inc. ("MERS") .  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's
successors and assigns.  MERS is organized and existing under the laws of Delaware, and has an address and telephone
number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS .  Borrower owes Lender the principal sum of
Two Hundred Seventy-Five Thousand Seven Hundred Ninety-Three  Dollars (U.S.  $275,793.00 ). This debt is
evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly
payments, with the full debt, if not paid earlier, due and payable on  April 01, 2040. This Security Instrument secures to
Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications
of the Note; (b) the payment of all other sums, with interest, advanced under Paragraph 7 to protect the security of this
Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and
the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to Trustee, in trust, with power of
sale, the following described property located in  Fort Bend  County, Texas:

Block  One (1)

Lot Ten (10), of Riverpark West Sec. 10, a subdivision in Fort Bend County, Texas, according to the map
or plat thereof recorded in Slide No. 2006222, of the Plat Records of Fort Bend County, Texas.

20060222

which has the address of  22014 Rustic Canyon Lane, Richmond, TX 77469  ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances,
and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security
Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and
agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary
to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise
any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action
required of Lender including, but not limited to, releasing and canceling this Security Instrument.

FHA TEXAS DEED OF TRUST
(DoD) RA0268577 - fmerx.tx - rev. 10/21/2009

02/01 Rev. 04/08
(Page 1 of 8 pages)

001026147   BALLARD   R

6304   D2   001   001

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under Paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall deal with the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument,

FHA TEXAS DEED OF TRUST                              02/02 Rev 04/08
(DoD) RA0268877 - fmers.tx - rev. 10/21/2009          (Page 2 of 8 pages)

first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) Default. Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn- St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j - 3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within **90 days** from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to **90 days** from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice

provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph.

**14.   Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end, the provisions of this Security Instrument and the Note are declared to be severable.

**15.   Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16.   Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this Paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this Paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

## NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17.   Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18.   Foreclosure Procedure.** If Lender requires immediate payment in full under Paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Paragraph 18, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public vendue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to

the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Paragraph 18, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. Release. Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

20. Substitute Trustee; Trustee Liability. All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

21. Subrogation. Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

22. Partial Invalidity. In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

23. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property. Check box as applicable:

[ X ]   Purchase Money.

The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

[ ]   Owelty of Partition.

The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

[ ]   Renewal and Extension of Liens Against Homestead Property.

The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

[ ]   Acknowledgement of Cash Advanced Against Non-Homestead Property.

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

**24. Loan Not a Home Equity Loan.** The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Paragraph 24.

**25.   Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

     [X] Planned Unit Development Rider


     BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_Royce Ballard_ _____ (Seal)

**Royce Ballard**                                                                                -Borrower

STATE OF TEXAS, _____ County,

This instrument was acknowledged before me on _____, _____, by Royce Ballard.

_____
Notary Public

_____
Printed Name of Notary Public

FHA TEXAS DEED OF TRUST
(DoD) RA0268877 - fmers.tx - rev. 10/21/2009

02/02 Rev 04/08
(Page 8 of 8 pages)

FHA Case No.: 493-9458265-703
Loan No.: ▇▇▇▇0225

# FHA PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **Eighth** day of **March, 2010**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to **Southwest Funding, L.P.** ("Lender") of the same date and covering the property described in the Security Instrument and located at:

**22014 Rustic Canyon Lane**
**Richmond, TX  77469**
[Property Address]

The Property Address a is part of a planned unit development ("PUD") known as:

**Riverpark West**
[Name of Planned Unit Development Project]

**PUD COVENANTS.**  In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.      So long as the Owners' Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners' Association policy.  Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard.  In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B.      Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C.      If Borrower does not pay PUD dues and assessments when due, then Lender may pay them.  Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument.  Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

(DoD) RA0268877 - frd_pud.mfa - Rev 04/14/2008          (Page 1 of 2 pages)                                        2/91

FHA Case No.: 493-9458265-703
Loan No.: ██0225

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

*Royce Ballard*  _____ (Seal)
**Royce Ballard**                                 -Borrower

# EXHIBIT 2

2016143554
ELECTRONICALLY RECORDED
Official Public Records
12/27/2016 10:30 AM



*Laura Richard*
Laura Richard, County Clerk
Fort Bend County Texas
Pages:     2          Fee: $ 15.00

This Document Prepared By:
**LISA CAMPBELL MOORE**
**BANK OF AMERICA**
**MC: FL1-908-01-05**
**4909 SAVARESE CIR.**
**TAMPA, FL 33634**
**(800) 444-4302**

When Recorded Mail To:
**FIRST AMERICAN TITLE**
**COMPANY**
**NATIONAL RECORDING**
**1100 SUPERIOR AVE, SUITE 200**
**CLEVELAND, OH  44114**

Tax/Parcel #:  6465100010100901

_____ [Space Above This Line for Recording Data] _____

## ASSIGNMENT OF DEED OF TRUST

For Value Received, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR SOUTHWEST FUNDING, L.P., ITS SUCCESSORS AND ASSIGNS** (herein "Assignor"), whose address is P.O. Box 2026, Flint, MI 48501-2026, does hereby grant, assign, transfer and convey unto **BANK OF AMERICA, N.A.** (herein "Assignee"), whose address is **1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063**, and its successors and assigns all its right, title and interest in and to a certain Deed of Trust described below.

Original Beneficiary: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS NOMINEE FOR SOUTHWEST FUNDING, L.P., ITS SUCCESSORS AND ASSIGNS**
Borrower(s): ROYCE BALLARD, A SINGLE MAN
Original Trustee: KELLY RULE
Date of Deed of Trust: **MARCH 8, 2010**
Original Loan Amount: **$275,793.00**
Property Address: **22014 RUSTIC CANYON LANE, RICHMOND, TEXAS 77469**

Recorded on **MARCH 10, 2010** in INSTRUMENT NO. 2010020488     **AND RE-RECORDED ON JUNE 8, 2010 IN INSTRUMENT NO. 2010052685** of the official Records of FORT BEND COUNTY, State of TEXAS
LOT TEN (10), BLOCK , ONE (1) OF RIVERPARK WEST SEC. 10, A SUBDIVISION IN FORT BEND COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN SLIDE NO. 20060222, OF THE PLAT RECORDS OF FORT BEND COUNTY, TEXAS.

Assignment of Deed of Trust - MERS 09292016_426          Page 1
Wintrack #: 10604299

569021216286304
MIN #:                    0225-8
MERS Phone: (888) 679-6377

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on

**DEC 1 3 2016**

Date

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR SOUTHWEST FUNDING, L.P., ITS SUCCESSORS AND ASSIGNS**

By: _____        **JAMES J QUINLAN**
                                    **ASSISTANT VICE PRESIDENT**

_____ [Space Below This Line for Acknowledgments] _____

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH

The foregoing instrument was acknowledged before me this _____   **DEC 1 3 2016**

by **JAMES J QUINLAN, ASSISTANT VICE PRESIDENT,** of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR SOUTHWEST FUNDING, L.P., ITS SUCCESSORS AND ASSIGNS,** on behalf of the company. He/She is personally known to me or who has produced _____ N/A _____ as identification.

_____
Notary Public

LORI DAVIS-CROSS
Notary Public, State of Florida
Commission# FF 242273
My comm. expires June 21, 2019

Printed Name: _____ Lori Davis-Cross _____
My commission expires: _____ 6/21/2019 _____

BALLARD
52329801                    TX
FIRST AMERICAN ELS
ASSIGNMENT

Assignment of Deed of Trust - MERS 09292016_426        Page 2
Wintrack #: 10604299

569021216286304
MIN # _____ 00225-8
MERS Phone: (888) 679-6377

# EXHIBIT 3

22014 RUSTIC CANYON LANE
RICHMOND, TX 77469

00000007453681

FILED

### NOTICE OF [SUBSTITUTE] TRUSTEE'S SALE

**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.**

2019 JAN 31 AM 8:22

~~Laura Richard~~
COUNTY CLERK
FORT BEND COUNTY, TEXAS

1.  **Date, Time, and Place of Sale.**

    Date:    March 05, 2019

    Time:    The sale will begin at 1:00PM or not later than three hours after that time.

    Place:   FIRST FLOOR MEETING ROOM, 301 JACKSON STREET,, RICHMOND, TEXAS OR AS DESIGNATED BY THE COUNTY COMMISSIONERS or as designated by the county commissioners.

2.  **Terms of Sale.**  Cash.

3.  **Instrument to be Foreclosed.**  The Instrument to be foreclosed is the Deed of Trust or Contract Lien dated March 08, 2010 and recorded in Document CLERK'S FILE NO. 2010020488; REFILED UNDER CLERK'S FILE NO. 2010052685 real property records of FORT BEND County, Texas, with ROYCE BALLARD, grantor(s) and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS"), AS NOMINEE, mortgagee.

4.  **Obligations Secured.**  Deed of Trust or Contract Lien executed by ROYCE BALLARD, securing the payment of the indebtednesss in the original principal amount of $275,793.00, and obligations therein described including but not limited to the promissory note and all modifications, renewals and extensions of the promissory note.  BANK OF AMERICA, N.A. is the current mortgagee of the note and Deed of Trust or Contract Lien.

5.  **Property to Be Sold.**  The property to be sold is described in the attached Exhibit A.

6.  **Mortgage Servicer Information.**  The Mortgage Servicer is authorized to represent the Mortgagee by virtue of a servicing agreement with the Mortgagee. Pursuant to the Servicing Agreement and Texas Property Code § 51.0025, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the lien securing the Property referenced above. CARRINGTON MORTGAGE SERVICES, LLC, as Mortgage Servicer, is representing the current mortgagee, whose address is:

c/o CARRINGTON MORTGAGE SERVICES, LLC
1600 SOUTH DOUGLASS ROAD SUITE 200-A
ANAHEIM, CA 92806

BRIAN CORMIER, CARMEN MUNIZ, EVELYN JOHNSON, SAMUEL DAFFIN II, CARL MEYERS, WAYNE WHEAT, LEB KEMP, VINCE ROSS, TRACI YEAMAN, KELLY MCDANIEL, KENNY SHIREY, CARY CORENBLUM, MATTHEW HANSEN, ISRAEL CURTIS, JOHN SISK, CLAY GOLDEN, STEPHEN MAYERS, EVAN PRESS, ANNA SEWART, DAVID BARRY, BYRON SEWART
Substitute Trustee
c/o BARRETT DAFFIN FRAPPIER TURNER & ENGEL, LLP
    4004 Belt Line Road, Suite 100
    Addison, Texas 75001

| | Certificate of Posting |
My name is _____Brian Cormier_____, and my address is c/o 4004 Belt Line Road, Suite 100, Addison, Texas 75001. I declare under penalty of perjury that on _1–31–19_ I filed at the office of the FORT BEND County Clerk and caused to be posted at the FORT BEND County courthouse this notice of sale.

Declarants Name: ~~Brian Cormier~~
Date: _1–31–19_

FCTX_NSTS_Sigs.rpt - (03/08/2016) - Ver-45

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
NOS00000007453681

00000007453681

FORT BEND

**EXHIBIT "A"**

LOT TEN (10), BLOCK ONE (1), OF RIVERPARK WEST SEC. 10, A SUBDIVISION IN FORT BEND COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN SLIDE NO. 2006222, OF THE PLAT RECORDS IN FORT BEND COUNTY, TEXAS.

NOS00000007453681

# EXHIBIT 4

22014 RUSTIC CANYON LANE
RICHMOND, TX 77469

00000007453681

### NOTICE OF [SUBSTITUTE] TRUSTEE'S SALE

**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.**

1.   **Date, Time, and Place of Sale.**

    Date:    July 03, 2018

    Time:    The sale will begin at 1:00PM or not later than three hours after that time.

    Place    FIRST FLOOR MEETING ROOM, 301 JACKSON STREET,, RICHMOND, TEXAS OR AS DESIGNATED BY THE COUNTY COMMISSIONERS or as designated by the county commissioners.

2.   **Terms of Sale.** Cash.

3.   **Instrument to be Foreclosed.** The Instrument to be foreclosed is the Deed of Trust or Contract Lien dated March 08, 2010 and recorded in Document CLERK'S FILE NO. 2010020488; REFILED UNDER CLERK'S FILE NO. 2010052685 real property records of FORT BEND County, Texas, with ROYCE BALLARD, grantor(s) and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS"), AS NOMINEE, mortgagee.

4.   **Obligations Secured.** Deed of Trust or Contract Lien executed by ROYCE BALLARD, securing the payment of the indebtednesses in the original principal amount of $275,793.00, and obligations therein described including but not limited to the promissory note and all modifications, renewals and extensions of the promissory note.   BANK OF AMERICA, N.A. is the current mortgagee of the note and Deed of Trust or Contract Lien.

5.   **Property to Be Sold.** The property to be sold is described in the attached Exhibit A.

6.   **Mortgage Servicer Information.** The Mortgage Servicer is authorized to represent the Mortgagee by virtue of a servicing agreement with the Mortgagee. Pursuant to the Servicing Agreement and Texas Property Code § 51.0025, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the lien securing the Property referenced above. BANK OF AMERICA, N.A., AS SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, as Mortgage Servicer, is representing the current mortgagee, whose address is:

c/o BANK OF AMERICA, N.A., AS SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP
7105 CORPORATE DRIVE
PLANO, TX 75024

BRIAN CORMIER, CARMEN MUNIZ, MERRY CHRIS BISHOP, SAMUEL DAFFIN II, KENNY SHIREY, ISRAEL CURTIS, WES WHEAT, STEPHEN MAYERS, COLLETTE MAYERS, KELLY MCDANIEL, LEB KEMP, TRACI YEAMAN, TROY ROBINETT, CARL MEYERS, ROBERT AGUILAR, KRISTI ALVAREZ, JULIAN PERRINE, FREDERICK BRITTON,DANA DENNEN,CINDY DENNEN,KINNEY LESTER
Substitute Trustee
c/o  BARRETT DAFFIN FRAPPIER TURNER & ENGEL, LLP
    4004 Belt Line Road, Suite 100
    Addison, Texas 75001

#### Certificate of Posting

My name is _____, and my address is c/o 4004 Belt Line Road, Suite 100, Addison, Texas 75001. I declare under penalty of perjury that on _____ I filed at the office of the FORT BEND County Clerk and caused to be posted at the FORT BEND County courthouse this notice of sale.

Declarants Name: _____
Date: 5-14-18

NOS00000007453681

00000007453681

FORT BEND

## EXHIBIT "A"

LOT TEN (10), BLOCK ONE (1), OF RIVERPARK WEST SEC. 10, A SUBDIVISION IN FORT BEND COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN SLIDE NO. 2006222, OF THE PLAT RECORDS IN FORT BEND COUNTY, TEXAS.

NOS00000007453681

# EXHIBIT 5

22014 RUSTIC CANYON LANE
RICHMOND, TX 77469

NOTICE OF [SUBSTITUTE] TRUSTEE'S SALE                                    00000007453681

**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is
serving on active military duty, including active military duty as a member of the Texas National Guard or the
National Guard of another state or as a member of a reserve component of the armed forces of the United States,
please send written notice of the active duty military service to the sender of this notice immediately.**

1.      **Date, Time, and Place of Sale.**

        Date:     November 06, 2018

        Time:     The sale will begin at 1:00PM or not later than three hours after that time.

        Place     FIRST FLOOR MEETING ROOM, 301 JACKSON STREET,, RICHMOND, TEXAS OR AS
                  DESIGNATED BY THE COUNTY COMMISSIONERS or as designated by the county commissioners.

2.      **Terms of Sale.** Cash.

3.      **Instrument to be Foreclosed.** The Instrument to be foreclosed is the Deed of Trust or Contract Lien dated March 08,
2010 and recorded in Document CLERK'S FILE NO. 2010020488; REFILED UNDER CLERK'S FILE NO. 2010052685
real property records of FORT BEND County, Texas, with ROYCE BALLARD, grantor(s) and MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS"), AS NOMINEE, mortgagee.

4.      **Obligations Secured.** Deed of Trust or Contract Lien executed by ROYCE BALLARD, securing the payment of the
indebtednesses in the original principal amount of $275,793.00, and obligations therein described including but not limited
to the promissory note and all modifications, renewals and extensions of the promissory note. BANK OF AMERICA, N.A.
is the current mortgagee of the note and Deed of Trust or Contract Lien.

5.      **Property to Be Sold.** The property to be sold is described in the attached Exhibit A.

6.      **Mortgage Servicer Information.** The Mortgage Servicer is authorized to represent the Mortgagee by virtue of a
servicing agreement with the Mortgagee. Pursuant to the Servicing Agreement and Texas Property Code § 51.0025, the
Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the lien securing the
Property referenced above. CARRINGTON MORTGAGE SERVICES, LLC, as Mortgage Servicer, is representing the
current mortgagee, whose address is:

c/o CARRINGTON MORTGAGE SERVICES, LLC
1600 SOUTH DOUGLASS ROAD SUITE 200-A
ANAHEIM, CA 92806

BRIAN CORMIER, CARMEN MUNIZ, MERRY CHRIS BISHOP, SAMUEL DAFFIN II, KENNY SHIREY, ISRAEL
CURTIS, WAYNE WHEAT, KELLY MCDANIEL, LEB KEMP, TRACI YEAMAN, CARL MEYERS, ROBERT AGUILAR,
KRISTI ALVAREZ, JULIAN PERRINE, DANA DENNEN, CINDY DENNEN, KINNEY LESTER, EVAN PRESS, CARY
CORENBLUM, AMY BOWMAN, FREDERICK BRITTON
Substitute Trustee
c/o  BARRETT DAFFIN FRAPPIER TURNER & ENGEL, LLP
       4004 Belt Line Road, Suite 100
       Addison, Texas 75001

                                        Certificate of Posting

My name is      **Brian Cormier**                , and my address is c/o 4004 Belt Line Road, Suite 100, Addison, Texas 75001. I
declare under penalty of perjury that on  _10-15-18_     I filed at the office of the FORT BEND County Clerk and caused to be posted at
the FORT BEND County courthouse this notice of sale.

Declarants Name;                        Brian Cormier
Date: _10-15-18_

FILED

7818 OCT 15  AM 10: 53

COUNTY CLERK
FORT BEND COUNTY, TEXAS

NOS00000007453681

00000007453681

FORT BEND

## EXHIBIT "A"

LOT TEN (10), BLOCK ONE (1), OF RIVERPARK WEST SEC. 10, A SUBDIVISION IN FORT BEND COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN SLIDE NO. 2006222, OF THE PLAT RECORDS IN FORT BEND COUNTY, TEXAS.

NOS00000007453681